IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | |
|---|---|
| MICHAEL O. LIVINGSTONE,<br>    Plaintiff,<br>v.<br>WALDEN UNIVERSITY,<br>    Defendant. | Case No.: 1:22-CV-03096-LKG |

**DEFENDANT WALDEN UNIVERSITY'S NOTICE OF INTENT TO FILE
A MOTION AND REQUEST FOR PRE-MOTION CONFERENCE**

Defendant Walden University files this notice to advise the Court that Walden intends to move to dismiss this action, and to request a pre-motion conference. *See* Dkt. 18, CMO § II.A.

**PROPOSED BRIEFING SCHEDULE AND STATUS OF MEET AND CONFER**

The parties have conferred, and Plaintiff opposes the proposed motion. Walden proposes the following briefing schedule: (1) Motion due 14 days after the Pre-Motion Conference; (2) Opposition brief due 30 days after the Motion; (3) Reply brief due 21 days after the Opposition.

**SUMMARY OF THE MOTION**

This suit arises from Plaintiff Michael Livingstone's belief that he should have been issued an extra $3,000 in federal student loans. Mr. Livingstone has refused Walden's multiple attempts to resolve this disagreement, and instead has brought this 438-paragraph, 16-count complaint, in which he seeks $40 million in damages and extraordinary injunctive relief. Unfortunately, this is Mr. Livingstone's modus operandi. He is a serial litigant who has filed many lawsuits over the last several years—under his current and prior names—against various colleges and universities that he has attended. Walden University is just the latest target of Mr. Livingstone's harassment.

Mr. Livingstone's entire complaint is subject to dismissal under Rule 12(b)(1), for failure of Article III justiciability, and also under Rule 12(b)(6), for failure to state viable claims.

**I. Mr. Livingstone alleges no Article III justiciable controversy.** Mr. Livingstone's entire suit should be dismissed for lack of Article III justiciability. The suit suffers two such defects, and thus should be dismissed under Federal Rule 12(b)(1).

*First*, Mr. Livingstone lacks standing for failure to plead an injury. He faults Walden for not approving an increase to a "cost of attendance" (i.e. room and board) federal student loan. Dkt. 21 ¶¶ 9–101. But he concedes that the money in question is not his *or* Walden's—it is a government loan. *Id.* ¶¶ 28, 40. And he alleges no interruption to his tuition loans or to his studies. Instead, he admits that he was always on track to graduate (and in fact did graduate) at the end of 2022, with A grades. *Id.* ¶¶ 21, 23, 102–07. Instead, Mr. Livingstone alleges only two types of harm. First is an impact to his rental status, through "stigmatized [ ] rent history," a poor "consumer credit report," and so on. *Id.* ¶¶ 108–10. This does not plead recoverable injury. *See e.g. Evans v. Am.*

1

*Collection Enter.*, No. 22-0746, 2022 WL 3923394, at *6 (D. Md. Aug. 31, 2022). Second, he alleges "mental anguish" and "loss of enjoyment of life," allegedly arising from this same rental situation. *E.g.* Dkt. 21 ¶ 112. This is not sufficient either. *See Evans*, 2022 WL 3923394, at *6.

***Second***, Mr. Livingstone's claims are moot and not redressable. As he pleaded, his Walden tenure was scheduled to end (and did end) upon graduation in December 2022. Dkt. 21 ¶¶ 21, 23. Mr. Livingstone is thus no longer a Walden student. Again, Mr. Livingstone's suit does not assert that he has, or ever had, a right to Walden's money, or that Walden itself is improperly retaining money that belongs to Mr. Livingstone. Instead, this controversy is about the processing of a federal loan, eligible only to active college students. The issue is thus moot, as Walden cannot process federal student loans for non-students. There is nothing left for the Court to order Walden to do. *See Nat'l Fed'n of the Blind v. Dep't of Educ.*, 407 F. Supp. 3d 524, 535–36 (D. Md. 2019).

**II. Mr. Livingstone's claims are also legally defective.** Dismissal is also appropriate because each of Mr. Livingstone's 16 counts is defective and subject to Rule 12(b)(6) dismissal.

***Count I, Title VI Discrimination.*** Title VI of the Civil Rights Act forbids racial discrimination by universities like Walden, who take federal dollars. A Title VI claim must "plead sufficient facts supporting that… the defendant intentionally discriminated against [him] on the basis of race, color, or national origin." *Evans v. 7520 Surratts Rd. Ops., LLC*, No. 8:21CV01637, 2021 WL 5326463, at *3 (D. Md. Nov. 16, 2021). A claim must do more than allege "disparate treatment" and "discriminatory animus"—it "must give some facts to support that the Defendants' [actions were] motivated by race." *Id.* Here, Mr. Livingstone only pleads that his "[p]rotected characteristic is black race," and that he "believes and therefore avers that [Walden] saw and used [his] black race to deny his [loan] increase." Dkt. 21, ¶ 119, 124. But Mr. Livingstone cites no facts, beyond his "belief," to support this theory. That is not enough to pass 12(b)(6) scrutiny. *See Carter v. SNC-Lavalin Constr., Inc.*, No. 17-3198, 2019 WL 918382, at *3 (D. Md. Feb. 25, 2019).

***Count II, Equal Credit Opportunity Act (ECOA).*** The ECOA bars discrimination against credit applicants "on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). For a claim to proceed, it must allege that the defendant treated the claimant less favorably because of a protected characteristic. But as with Count I, Count II pleads only "belief," and no supporting facts. Indeed, most of this count appears to be an exact copy-paste of Count II. *See* Dkt. 21 ¶ 139–41, 144–46. This copy-paste trend pervades the entire Complaint.

***Count III, "Admission Malpractice."*** This claim faults Walden for tailoring courses to working professionals—which Mr. Livingstone admits he knew and which he admits is widely advertised. Since he was not employed at the time, Mr. Livingstone says that he "did not receive the educative value" because some Walden courses ask students to draw on workplace experience, and because his lack of a job made him "stressed by financial issues." Dkt. 21 ¶¶ 156–70. But he cites no legal principle that prohibits Walden's approach or that supports a related civil claim. At best, this count sounds in "education malpractice," which is not a viable legal claim. *N.T. v. Balt. City Bd. of Sch. Comm'rs*, No. 11-356, 2011 WL 3747751, at *8 (D. Md. Aug. 23, 2011).

***Count IV, Fraudulent Misrepresentation.*** Count IV restates most of the same paragraphs as Count III. *See* Dkt. 21 ¶¶ 175–91. Mr. Livingstone then points to two Walden statements, which generally "stated that Walden is for working adults." *Id.* ¶¶ 192–93. But he does not allege any of the elements of fraud—for example, he does not allege that the statements were false (he concedes

they were true), or that they caused him to act in reliance on them (he enrolled despite these statements). And again, Mr. Livingstone suffered no harm, got all A's, and graduated on time.

*Counts V, IX, and X, statutory claims.* Counts V, IX, and X invoke various state statutes on false advertising, consumer fraud, and deceptive trade practices. Each statute addresses "deceptive" and "misleading" statements and practices, or practices that "create[ ] a likelihood of confusion or of misunderstanding." To support each of these claims, Mr. Livingstone copies virtually verbatim the same operative paragraphs from Counts III and IV. *See* Dkt. 21 ¶¶ 198–214, 317–27, 289–303. But as in Count IV, Mr. Livingstone pleads no falsity or reliance, and instead pleads the opposite. This is the most fundamental problem among several flaws with these claims.

*Counts VI and VII, Negligence.* These counts both allege that Walden failed to post certain contact information, allegedly violating Title IV of the Higher Education Act. But Mr. Livingstone admits that he had this same contact information, and used it, from the very start. Dkt ¶¶ 218–58. In any event, Title IV conveys no private right of action. *Osei v. Univ. of Md.*, 202 F. Supp. 3d 471, 482 (D. Md. 2016). Perhaps aware of this—because he used to be named "Michael Osei," and he was the plaintiff who failed in the case cited above—Mr. Livingstone tries to reframe Title IV as a standard for "statutory negligence." Dkt. 21 ¶¶ 218, 240. The law supports no such theory.

*Count VIII, "Malfeasance; Misfeasance; Non-Feasance."* This claim repeats the allegations of Counts VI and VII verbatim, just without the dressing of Title IV. Dkt. 21 ¶¶ 260–78. Mr. Livingstone's allegations are still contradictory, just as they were in the prior claims, but here they do not even attempt to invoke a legal principle that could form the basis of a civil claim.

*Counts XI and XIV, "Retaliation."* Count XI pleads a claim of "retaliation," under state "constitutions." State laws recognize no general "retaliation" claim. Instead, they leave retaliation to the employment context under Title VII. *See e.g. Holley v. DTM Corp.*, No. 09-1160, 2010 WL 3221841, at *5 (D. Md. Aug. 13, 2010). This is the type of retaliation that Mr. Livingstone alleges in Count XIV. But he is not a Walden employee, and thus has no employment retaliation claim. *See e.g. Brugh v. Mount Aloysius Coll.*, 432 F. Supp. 3d 566, 586–87 (W.D. Pa. 2020).

*Count XII, Implied Covenant of Good Faith and Fair Dealing.* The laws of the forum state (Maryland) and those of the site of contract (Minnesota) both reject implied-covenant claims.

*Count XIII, Tortious Interference.* This count fails to plead the basic elements of tortious interference—in particular, by failing to plead the existence of a third party with whom there might be a prospective economic opportunity, and failing to plead any actual lost opportunity.

*Counts XV and VI, Conversion, "Fraudulent Misuse and Abuse of Federal Funds."* In these near-identical claims, Plaintiff does not attempt to plead the elements of conversion or fraud—instead, he again alleges a violation of Title IV, for which he has no private right to sue.

| /s/ _____ | /s/ _____ |
|---|---|
| Erinn M. Maguire, Esq., Fed. Bar # 29474 | Christopher Bayh (pro hac vice) |
| LAWRENCE LAW, LLC | BARNES & THORNBURG LLP |
| 323 W. Camden Street, Suite 700 | 1717 Pennsylvania Ave NW #500 |
| Baltimore, Maryland 21201 | Washington, DC 20006 |
| Tel. (410) 837-6995 | Fax (410) 837-6995 | Tel. (202) 289-1313 | Fax (202) 289-1330 |
| erinn@lawrencelawllc.com | chris.bayh@btlaw.com |

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 24th day of February, 2023, a copy of the foregoing was served via the Court's ECF system on all parties and counsel of record.

/s/ _____
Erinn M. Maguire (29474)