```
================================================================
         UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
                              (BALTIMORE)
================================================================
```

|                              |   |                          |
|------------------------------|---|--------------------------|
| MICHAEL O. LIVINGSTONE       | : |                          |
|                              | : |                          |
| *Plaintiff*                  | : |                          |
|                              | : |                          |
| vs.                          | : |                          |
|                              | : | Civil Case No: 22-3096-LKG |
| WALDEN UNIVERSITY, LLC       | : |                          |
|                              | : |                          |
| *Defendant*                  | : |                          |

```
================================================================
```

1. **Plaintiff's Request for Judicial Notices in support of Plaintiff's upcoming opposition to Defendant's Motion to Dismiss (ECF Dkt. No. 43); and,**
2. **Plaintiff's Intent to file Cross-Motion for Sanctions as to Defendant's ECF Dkt. No. 48.**

```
================================================================
```

### A) **INTRODUCTION**

Pursuant to § II.A of this courtroom's Case Management Order (ECF Dkt. No.18), Plaintiff Mr. Michael O. Livingstone ("Plaintiff") hereby submit this notice of intent to file a cross-motion against Walden University, LLC ("Walden" or "Defendant") as to ECF Dkt. No. 48 for violating Plaintiff's admonition or Fed. R. Civ. Proc. 11(c)(2) pre-notice on the record with bad-faith retaliatory *ad hominem* references to Plaintiff's unrelated cases to prejudice this court to abuse its discretion.

Plaintiff requests for judicial notices in support of his upcoming opposition to Defendant's motion to dismiss (ECF Dkt. No. 43).

Plaintiff shall file a separate memorandum of law brief that will focus on the claims presented in the operative complaint and defendant's motion to dismiss without digressing about the highly prejudicial references to Plaintiff's previous cases.

**Request for Leave to exceed page limits for this instant notice.**

As a preliminary issue, Plaintiff incorporates a request for leave to exceed the 3-page limit for *intent to file motions* because of the consolidated nature of this filing and judicial notices requested.

**Walden's references to Plaintiff's unrelated cases triggers Fed. R. Civ. P. 56 (c) to convert *motion to dismiss* into *summary judgment motion* against four corner's rule.**

The applicable standard of review for Rule 12(b) motions does not permit this court to consider extraneous references to material that does not appear within the four corners of the operative complaint itself. Walden made references to Plaintiff's previous unrelated cases against other entities in their motion to dismiss (ECF Dkt. No. 43-1 at 3–5).

Discretion will be abused if this court does not use Fed. R. Civ. P. 56 (c) to convert Walden's motion to dismiss and order discovery into a motion for summary judgment.

It is well-recognized that Rule 12(b) motions should be converted into a motion for summary judgment pursuant to Fed. R. Civ. P. 56(c) when exhibits and/or affidavits are attached to a motion to dismiss. When "[a] court considers evidence beyond the complaint in deciding a Rule 12(b)(6) motion, it should be procedurally converted into a motion for summary judgment." See *Anjelino v. New York Times Co.,* 200 F.3d 73, 88 (3d Cir. 1999); see also *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993).

Denial of discovery would cause actual and substantial prejudice to Plaintiff because this District Court would improperly consider evidence beyond Plaintiff's initial complaint. See *Jurcev v. Central Community Hosp.*, 7 F.3d 618, 627 (7th Cir.1993), *cert. denied*, 511 U.S. 1081,114 S.Ct.1830,128 L.Ed.2d 459 (1994).

**Briefing schedule**

Plaintiff respectfully urge this court to use the briefing schedule under the Local Civil Rules of this court because a cross-motion also serves as a response to a motion. If this court permits Walden to file their intended motion in ECF Dkt. No. 48, then Plaintiff intends to file a cross-motion. *See* e.g., U.S. Bankr. Ct. Rules N.D. Cal., B.L.R.7007- 1(d) (providing that "together with an opposition, a party responding to a motion may file a counter-motion related to the subject matter of the original motion").

## B) LEGAL ARGUMENTS AND DISCUSSIONS IN SUPPORT

The following arguments and adjudicative facts supports Plaintiff's cross-motion and request for judicial notices:

**1) Walden's ECF Dkt. No. 48 is improperly before this court because it does not conform with the exacting standard of this courtroom's case management order.**

Walden's intent to file a motion for injunction against Plaintiff (ECF No. 48) should be quelled and rejected-out-of-hand like a piece of paper because it does not meet the exacting standards of the Case Management Order because Plaintiff did not get to collaborate. Plaintiff sent this reply to Walden:

> …I DECLINE to give you my response unless I see your actual copy of your intent to file your shapeless motion for injunction against me.

(*see* ECF No. 48's email Exhibit A).

Rather than presenting the actual document for Plaintiff to collaborate his response as required by procedure, Walden filed ECF Dkt. No. 48 without first showing the content to Plaintiff. That is an apparent violation of the case management order.

Accordingly, based on procedural grounds alone, this court should reject Walden's ECF No. 48 as an improperly-filed document.

### 2) Walden adamantly ignores judicial efficiency and judicial economy; our Federal Judges are busy.

The posture of this case shows that Walden has adamantly failed to uphold the principles of judicial economy and judicial efficiency.

On December 22, 2022, Plaintiff filed a civil rights amended complaint (ECF No. 20) against Walden. On January 17, 2023, Plaintiff advised this court about his intent to move this court for Rule 65 preliminary injunction (ECF No. 31); which this court placed on abeyance on February 1, 2023 to allow Walden to respond to the issues presented in Plaintiff's amended complaint "pending Defendant's response to Plaintiff's amended complaint"(ECF No. 36).

Walden advised this court about its intent to file a motion to dismiss Plaintiff's Amended Complaint. This court entered a scheduling order on February 24, 2023 (ECF No.39) to allow the parties to brief Walden's motion to dismiss. Walden filed motion to dismiss on March 17, 2023 (ECF No. 43).

Rather than allow the court's scheduling order to play out for Plaintiff to equally respond to Walden's motion to dismiss by April 14, 2023 as ordered by this court, Walden intends to file a shapeless, bad-faith, scandalous, *non-sequitur* motion for "injunction against Plaintiff" to enjoin Plaintiff from bringing civil rights lawsuits against Walden and other universities (ECF No.48).

It should be clear by now that Walden wants to turn this litigation into an expensive entertainment; to digress the attention of this court's focus; to squander the precious time of this court; and waste taxpayer money; but see *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) (observing that "our judges are busy people"); see also *Bruner-McMahon v. County of Sedgwick*, Civil Action No.10-1064-KHV(D. Kan. Nov. 7, 2011) (recognizing the "bulging criminal and civil caseloads which each judge carries including judges who are fully eligible for retirement but choose to labor on").

In the interest of judicial efficiency, this court should not allow Walden to waste its time and tax payer money on *non sequitur* retaliatory motions.

### 3) *Cromer* factors are misplaced. They militate against Walden's arguments.

Walden presented this argument as a standard of review in ECF Dkt. No. 48, Page 2:

> …in tailoring an injunction, courts in the Fourth Circuit weigh four factors, known as "Cromer factors": "(1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions."*Chien v. Robbins*, No. 3:21-cv-501, 2021 WL 5756383, at *2–*5 (E.D. Va. Dec. 3, 2021) (quoting *Cromer*, 390 F.3d 812, 818), aff'd, 2022 WL 1711681 (4th Cir. May 27, 2022)…

These *Cromer* factors are misplaced in light of the following legal arguments and judicial notice.

### 4) As a black student, Plaintiff has a constitutional right to bring civil rights cases against Universities because of pervasive racial discrimination in our American system and Universities. *Cromer* factors are misplaced.

Walden wants this court to enjoin this black Plaintiff from bringing civil rights cases against other Universities and Walden. Some of the past lawsuits were in the year 2010. We are now in 2023 (i.e. 13 years ago). It is important to note that Plaintiff's lawsuits against universities involves Civil Rights Act.

Plaintiff's cross-motion is necessary because it is not illegal in this country to sue a University. Reject Walden's request because the U.S. Supreme Court has said in the case of *Tennessee v. Lane*, 541 U.S. 509, 510 (2004) at 541 that access to the courts is a "basic right." The Petition Clause protects the rights of individuals to appeal to courts and other forums established by the government for the resolution of legal disputes. See *Sure-Tan, Inc. v. NLRB*, 467 U. S. 883, 896– 897 (1984) (holding that "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government").

Plaintiff has a constitutionally-protected basic right under the state constitution in *pari materia* to federal constitution to test his claims of discrimination in the courts without any impediments. Plaintiff is not an advocate of using violence to fight racial oppression and discrimination because the civil rights activists who died for the Civil Rights Act such as late Rev. Dr. Martin Luther King; late U.S. Congressman John Lewis; and the freedom riders; did not use violence to fight racism.

Needless to say, racial prejudice and discrimination is still in our American system today and our universities are not exceptions. That is why some black people attend universities for only black people. This Plaintiff is black in complexion with African linguistic accent. So, Plaintiff experiences racial discrimination and racial prejudice in universities. This black American student must have free access to the courts as a basic right without any impediment to seek redress of his grievances civil rights violations.

5) **It will be a mockery of the bloody sacrifice and lost lives of Civil Rights Activists for this court to entertain Walden's shapeless intent to move this court to place <u>impediments against this black Plaintiff from using the courts to test his claims.</u>**

Plaintiff reminds this federal district court that the Civil Rights Act of 1964 is a sacrosanct bloody statute because some activists died for it. Again, human blood is enshrined in that Civil Right Statute. Any person with sagacity can discern that Walden is retaliating against Plaintiff for bringing civil rights lawsuits against Walden and other universities in the past.

Reject Walden's intent to retaliate because the U.S. Congress has granted all federal judges, including circuit court judges, the power to act against retaliation under civil rights statutes. See *Dirkes v. Borough of Runnemede*, 936 F. Supp. 235 (D. N. J. 1996) at 241 (stating that the federal courts have "broad remedial powers" to remedy Title VII violations because the Act states that "[t]he court may award… such other…relief as the court determines to be appropriate").

This federal court has a judicial duty as a guardian of the Civil Rights Act. See *Alexander v. Gardner-Denver Co.,* 415 U.S. 45 (1974) (stating that "final responsibility for enforcement of Title VII is vested with federal courts. The Act authorizes courts to issue injunctive relief and to order such affirmative action as may be appropriate to remedy the effects of unlawful employment practices. 42 U.S.C. §§ 2000e-5(f) and (g) (1970 ed., Supp. II).

It will be against the sacred oath of the presiding District Judge to ignore the constitutional commands under the right to petition. In *Lemon v. Kurtzman*, 403 U.S. 602 (1971); 463 U.S. 783 (1983), the U.S. Supreme Court noted that all Judges take their oaths of office to support the constitution itself, not a person-entity, office, government body, or judicial opinion. *Id*. This constitution and the solemn oath thereto is the apropos and apogee that should control above all other competing technicalities, powers and influences -- the decisions of Courts. *Id*.

Accordingly, this court should follow constitutional commands as instructive authority.

6) **It is not illegal to file Appeals. No Judge in Plaintiff's previous cases ever said or wrote any *adjudicative finding of fact* that Plaintiff brought "harassing lawsuit." <u>Judicially notice from Exhibit "D" Plaintiff prevailed in Fourth Circuit appeal</u>**

Walden presented this shapeless argument within ECF No. 48, Page 4 in paragraph 4:

> …Mr. Livingstone is a serial litigant, with a long history of filing harassing, pro se lawsuits. Dkt. 43-1 at 3–5. Again, this includes at least 14 prior lawsuits, plus 11 more appeals, brought in state and federal courts across four states. And again, seven of these lawsuits, plus six appeals, were filed against universities and their personnel…

Cross-motion is necessary to argue that filing an appeal is not a crime or illegal activity in America. There is no limit on the number of appeals a citizen can file in our courts. Appeal is a constitutional right.

Our U.S. Supreme Court has observed in the case of *Connick v. Myers*, 461 U. S. 138, 147 (1983) at 147 that there are some rights and freedoms that are so fundamental to liberty that they cannot be bargained away such as the constitutional right to appeal. Appellate Courts have responsibility to ensure that citizens are not deprived from those fundamental rights of appeal. *Keyishian v. Board of Regents of Univ. of State of N.Y.*, 385 U.S.589, 605–606 (1967). Walden is telling this court to violate the dictum of the learned justices in *Connick* and *Keyishian*.

It is important to note that absolutely no honorable competent Judge who presided in any of Plaintiff's previous lawsuits nationwide has ever written an adjudicative finding of fact that Plaintiff brought a "harassing lawsuit." It is not in the place of this instant US District Court in Maryland to determine whether plaintiff's previous lawsuits fall into the category of harassing lawsuit.

**7) <u>Walden does not determine whether a lawsuit is a harassing lawsuit or not.</u>**

While it is true that *Cromer* factors are against filing "harassing lawsuits," the question becomes whether Walden or the Courts determine whether a lawsuit is harassing or not. Walden does not get to make decisions for our competent Judges. Walden does not get to determine whether a lawsuit is a harassing lawsuit or not.

Just because Plaintiff did not prevail in a lawsuit or an appeal does not mean Plaintiff brought a harassing lawsuit. See e.g., *Jiricko v. Allison*, 259 F. App'x 472, 475 (3d Cir. 2007) (concluding that "an unfavorable court ruling does not give rise to an inference of an unlawful agreement").

Accordingly, the *Cromer* factors are misplaced.

**8) <u>A Fourth Circuit appeal where Plaintiff prevailed is not a "harassing appeal or lawsuit." Judicially notice from Exhibit "D" that Plaintiff prevailed in Fourth Circuit appeal before.</u>**

Cross-motion is necessary to show that Plaintiff's previous appeals are not "harassing appeals."

Judicially notice that this *pro se* Plaintiff prevailed in federal appeals. *See* attached Exhibit "D" where the fourth circuit vacated the entire opinion of the district court and remanded the case for further proceedings. See *Michael Osei v. University of MD Univ College*, No. 16-2074 (4th Cir. 2018) (slip opinion by panel of circuit Judges dated February 6, 2018).

Accordingly, the *Cromer* factors are misplaced.

### 9) Judicially-notice that settled civil rights case <u>against *Drexel University* in Exhibit A is not harassing lawsuit under *Cromer* factors.</u>

Walden's collection of so-called "harassing lawsuits" includes Plaintiff's 2014 civil rights case against Drexel University. However, judicially notice from attached **Exhibit "A"** that in 2014, Drexel University settled Plaintiff's civil rights case in the Eastern District of Pennsylvania in the case *Osei v. Drexel University et al.,* No. 2:14-cv-03414 (Hon. Juan Sanchez) without litigation.

Accordingly, the *crower* factors are not applicable to such a settled case.

### 10) Judicially notice that Chief US District Judge for Eastern District of Pennsylvania, <u>Hon. Juan Sanchez, rejected other attorney's references to Plaintiff's cases.</u>

Judicially notice from attached federal court order (Exhibit A) that when Drexel's attorney made similar references to Plaintiff's cases (*Id,* ECF No.16), presiding Chief U.S. District Judge, Hon. Juan Sanchez entered an opinion that also says this:

> …To the extent Osei seeks to strike extraneous material from Drexel's opposition pursuant to Federal Rule of Civil Procedure 12(f) in his reply brief, this request is also denied as Rule 12(f) only applies to pleadings. **The Court notes, however, that it has not considered any of Drexel's assertions that are immaterial and irrelevant to the issue**…

(*Id*, ECF No. 20, Filed 05/21/19, page 2, paragraph 5; exhibit A attached, emphasis added)

Accordingly, Plaintiff urges this U.S District Court in Maryland to adopt the same position that Chief US District Judge Honorable J. Sanchez adopted; and reject Walden's attorneys' immaterial references to plaintiff's cases and do not consider any of Walden's assertions.

### 11) There were no criminal charges, conviction, or any adjudicative facts by a Judge against this Plaintiff about "genitalia" and "morgue." <u>Walden is liable for defamation without judicial privilege.</u>

Plaintiff cross-motion is necessary because Walden goes *ad infinitum* and *ad nauseum* in ECF No. 48 , page 3 at bullet point Nos. 1-2 to defame and mislead this court that Plaintiff was criminally charged for harassment with references to "genitalia" and "morgue," suing women who rejected his romantic interests, and "persistent threats of violence." Walden did not cite the cases it is was referring.

Plaintiff categorically denies these unsupported bogus defamatory claims by Walden. There are no adjudicative facts written by a Judge about these bogus claims. There are no *finding*

*of facts* by a Judge about these shapeless claims or accusations. Walden's attorneys are schooled in law should to know that mere allegations are not facts.

**Plaintiff has never been convicted for any crime in his lifetime**. The law goes with convictions, not mere charges. Walden's attorneys should know the difference between charges and convictions.

12) **It not true that Plaintiff's cases have never made it past the pre-answer pleading stage. Judicially notice from attached Exhibit "B" active docket sheet of Plaintiff's case in U.S. District of New Jersey, under discovery for trial.**

Cross-motion and judicial notice is necessary because Walden and its attorneys intentionally misled this court that none of Plaintiff's cases has made it past the pleading stage nationwide (ECF Dkt. No. 48, page 2, paragraph 4)

This claim is readily negated by Plaintiff's pending federal case in US District Court for the District of New Jersey, i.e., *Livingstone v. Haddon Point Manager LLC*. et al., Civil No. 2019-13412-RBK-AMD (USDC-NJ, Hon. Robert Kugler, *sub judice*, under discovery) that is undergoing discovery (*see* Exhibit B). Plaintiff has successfully handled that case by proceeding *pro se* since 2019.

Plaintiff survived Haddon Point's motion to dismiss. *Id.* Presiding Senior U.S. District Judge, Honorable Robert Kugler, granted Plaintiff's motion for leave to amend his initial complaint; Haddon Point filed an Answer to the complaint. Currently, the court has ordered discovery. Plaintiff later obtained legal representation from Charles Izzo, Esquire. However, Mr. Izzo was ineffective non-federal litigator. So, he filed nothing in the case. The court terminated Mr. Izzo's representation because of his failure to meet the court's discovery plan.[1] Plaintiff has continued to proceed *pro se* in the case against *Haddon Point* having issued some subpoenas and answered interrogatories. *Id.*

Thus, Walden is liable for defamation and sanctions for misleading this court that none of plaintiff's cases have made it past the pleadings stage.

13) **Judicially Notice that there is no written adjudicative fact by any District Judge and Circuit Judges in Plaintiff's previous lawsuits against non-academic entities that Plaintiff's cases are vehicles of retribution in *Haddon Point* and *U-Haul* cases.**

Walden erroneously claims that "…The remaining seven lawsuits, which do not involve universities, all appear to be vehicles of retribution for grievances in Mr. Livingstone's personal

---

[1] **NOTE:** there are many reasons why a citizen would proceed pro se. One reason plaintiff is proceeding prose is because some lawyers have taken Plaintiff's money in the past without providing the contracted legal service.

life" (ECF No. 48, Page 2, paragraph 4). Plaintiff's meritorious case against *Haddon Point et al* (Exhibit B) readily negates Walden's shapeless claims.

Judicially notice from attached Exhibit "E" that Plaintiff also prevailed in his appeal at the US Court of Appeals for Third Circuit against U-Haul International, Inc. i.e. *Livingstone v. U-Haul Int'l*, et al., Appeal Case No. 21-2131 (Slip. Opinion dated February 11, 2022 by panel of circuit Judges). [2]

If indeed, Plaintiff's lawsuits against non-university entities are "vehicles of retribution," then the presiding Judges in those cases would have written adjudicative facts towards that end. It is not in the place of this court, Walden, and its attorneys to make such a conclusion of law.

Accordingly, cross-motion, judicial notice, and sanctions are necessary.

**14) Walden wants to shield itself from lawsuit without sovereign immunity.
Walden has not executed any general release with Plaintiff.
Rule 15(a) motion for leave to amend is the proper mechanism,
<u>not an injunction against Plaintiff to obtain leave to sue Walden or any university.</u>**

It is discernible from ECF No. 48, Page 1, Paragraph 4 that Walden wants to shield itself from lawsuit when Walden wrote this:

> …Walden requests that this injunction apply at least to Walden University, plus Walden's personnel and its current and former corporate affiliates."

Walden is deathly afraid of being sued again because of Walden's perpetual reckless wanton disregard for the rights of other people.

An injunction enjoining Plaintiff to seek *leave to sue Walden* is misplaced because the proper mechanism for Walden to shield itself from suit is an executed general release from all claims, not an injunction enjoining a Plaintiff from suing Walden. Walden has not executed any general release with Plaintiff.

Plaintiff brought this instant suit against Walden. The proper mechanism is Plaintiff can file a *motion for leave to amend* the operative complaint in this case under Rule 15(a) to include new claims that have accrued without filing another lawsuit. See *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In Plaintiff's pending case against *Haddon Point,* supra*,* Senior US District Judge Kugler, for example, granted Plaintiff's motion for leave to amend his complaint to include new claims that have accrued" in the case of *Haddon Point* where he wrote this:

---

[2] See also , https://www.govinfo.gov/content/pkg/USCOURTS-ca3-21-02131/pdf/USCOURTS-ca3-21-02131-0.pdf

…Plaintiff is simply seeking to cure certain deficiencies identified in the prior complaint and add causes of action that accrued after the filing of the first complaint." [3]

Judicially notice Haddon Point Manager LLC, Civil No. 19-13412 (RBK/AMD), 10-11 (D.N.J. Dec. 7, 2020).

In *Scott v. Walter Kidde Portable Equip., Inc*., No. 02-1460, 2002 U.S. Dist. LEXIS 15337, at *1 (E.D. Pa. Aug. 12, 2002), the court observed that one legal policy is to avoid "circuitry of action" and adjudicate related matters in one suit.

Accordingly, if Plaintiff wants to sue Walden, Plaintiff can simply use Rule 15(a) motion to amend his current complaint.

### 15) Plaintiff has never made personal attacks or threats against Judges and Counsel. Rather, judicially notice from Exhibit "C" adjudicative transcript that some Judges have openly exhorted Plaintiff to go to Law School.

Walden makes unfounded shapeless claim that Plaintiff has made personal attacks or physical threats against Judges (ECF Dkt. No. 48, page 2, paragraph 5, bullet point No. 2).

Plaintiff rejects and denies this baseless claim that is meant to prejudice this court and inflict abuse of discretion. No presiding Judge in Plaintiff's previous cases has written an adjudicative factual opinion that Plaintiff threatened him or her. This is a rather serious false defamatory statement.

Indeed, some Judges have openly appreciated and applauded Plaintiff's distinctive work, legal research, and argumentation despite the fact that Plaintiff proceeds *pro se*. Plaintiff is not that type of person. Judicially notice from attached **Exhibit "C"** adjudicative factual transcript that a New Jersey Superior Court Judge encouraged Plaintiff to go to Law School, for example, during court session:

> THE COURT: Are you a law student?
> THE DEFENDANT: pardon me?
> THE COURT: Are you a law student?
> THE DEFENDANT: No, your honor, but I--
> THE COURT: Oh. Well, you are doing good.
> THE DEFENDANT: I am considering law school after graduate school.
> THE COURT: Okay. All right. Well, I agree with you.

(Exhibit C using Transcript Page 11, Lines 14-18; General Page 8)

> THE COURT: You sure you're not taking law?
> THE DEFENDANT: Many people have told me to go to law school --

---

[3] See, https://casetext.com/case/livingstone-v-haddon-point-manager-llc-1

> THE COURT: Okay.
> THE DEFENDANT: -- and I'm really seriously thinking about it, especially after this incident –
> THE COURT: Well --
> THE DEFENDANT: -- also. So I'll take that as a compliment.
> THE DEFENDANT: Thank you very much.
> THE COURT: Okay. Good job.
> And that's the way it goes, counsel. It's okay

(Exhibit C using Transcript Page 11, Lines 14-18; general page 8)


### 16) Plaintiff has never made personal attacks against Defendant's counsel. Plaintiff sues attorneys who makes personal attacks and discriminatory hate crime against him, as in the case of *Haddon Point.*

Walden presented baseless unsupported claims that Plaintiff makes personal attacks against defendant's counsel in his previous cases (ECF Dkt. No. 48, p. 2, ¶5, bullet point No. 2).

That is a false and defamatory without any adjudicative fact. If an attorney representing someone in another case before another court felt that Plaintiff made personal attacks, then that attorney could advocate for themselves or raise that issue before the court in that case. It is not Walden's duty to advocate for any entity's attorney when that entity is not named in the caption of this instant case.

Plaintiff is not the type of *pro se* litigant attorneys can bully. Judicially notice that Plaintiff sued two attorneys and their law firm in the *Haddon Point* case and those two attorneys are representing themselves on the case docket of that case. *See* **Exhibit B** naming as defendants Nicolas Rotsides, Esquire; Travis Richard, Esquire; and Weishoff and Richards, LLC. Presiding Senior District Judge Honorable Kugler has never released those Attorneys as defendants in that case.

Instantly, Plaintiff filed an admonition in this case urging Walden's attorneys to stop making *ad hominem attacks* or references to Plaintiff's previous unrelated cases against other entities. Walden and its attorneys knowingly ignored Plaintiff's admonition and they continue to make *ad hominem* references to plaintiff's cases in ECF No. 48 with defamatory statements that are not supported by adjudicative "findings of facts" by a Judge.

Such contumacious behavior by Walden and its attorneys is not inconsequential under the law. If Walden's attorneys wants to do whatever they want with reckless disregard to Plaintiff's rights, then they must be prepared to face dire consequences at law.

**17) Walden referred to Plaintiff's 2010 temporary disciplinary action
by another university where plaintiff verbally reacted to racial discrimination;
a case that carries spiritual curses anathema pronounced by Plaintiff's black
<u>immortal ancestors and mother in Africa upon anybody who meddles with it.</u>**

Plaintiff filed an admonition on the docket warning Walden and its attorneys to mind their own business – i.e. this instant case itself. Yet, Walden and its attorneys have ignored the warning and chosen to meddle with Plaintiff's 2010 old case against Temple University where Plaintiff got temporary disciplinary action for verbally reacting to racial discrimination of his black skin color. No criminal charges were filed whatsoever. The *Temple* case is not related to this case against Walden in anyway.

Walden is naïve about aspects of that case that has nothing to do with Walden. Some fellow Americans such as these Walden attorneys are not well-travelled and they think everything is just superficial in their little small world. Some things go deeper than and it is not always legal.

Plaintiff again cautions Walden's attorneys that the 2010 Temple University case is not a typical ordinary case. There are supernatural and numinous aspects to that case because it involved racial discrimination against Plaintiff's humanity, which is an abomination against Plaintiff's African cultural heritage.

A plethora of background information that Walden does not know and it is not that record of that case is that after Plaintiff's 100-year grandmother and his mother pronounced and invoked some spiritual decrees and spiritually invoked the vengeance of the black ancestors from the slave dungeons of Africa, those people in the case who discriminated plaintiff experienced the vengeance of the black immortal ancestors in their own ways.

As background, an Organic Chemistry teacher was surprised that this black student got 100/100 for the first in his tough exam he gives to students for over 20 years. During a meeting in his office, he told Plaintiff to "you are black and you got 100/100 on this exam…think about something else instead of the sciences." The professor's words were not on record to use against him but the spiritual realm knew his words. Around that time, plaintiff was fresh from Africa and he invoked God's vengeance against that discriminatory professor. Plaintiff received temporary disciplinary action for that. However, the professor passed away naturally after plaintiff's grandmother performed the necessary rituals to invoke the anger of the black ancestor against him.

Plaintiff cautions Walden's attorneys to stop making references to those previous cases and mind their own business of this instant case against Walden because those spiritual decrees from his black ancestors still hang over those previous cases although the Tempe case has been over 13 years ago. There are things Plaintiff cannot control in the African heritage when it comes to discrimination.

Plaintiff is an American from tropical african tribe that directly fought slavery. Plaintiff's ancestors were part of the victims who suffered at the *gate of no return,* which former US President Barack Obama visited. [4]

Accordingly, this is a testament that plaintiff and his black ancestors including the civil rights activists do not condone any discrimination or retaliation thereto.

### 18) Walden's false defamatory statements in ECF No. 48 that are not supported by adjudicative findings of facts written by a Judge, are not protected by judicial or absolute privilege.

Cross-motion for sanctions against Walden is necessary because of Walden's false defamatory statements that are not supported by adjudicative facts written by a Judge in those cases.

Any assertion of judicial or absolute privilege by Walden is fatally defeated by malice and falsehood. The constitutionally guaranteed right to recover for reputational injuries was unduly constrained. *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698 (8th Cir. 1979)(cautioning that absolute immunity should not be "lightly conferred" as to preliminary statements); *Brown v. Collins*, 402 F.2d 209, 213 (D.C. Cir. 1968) (same).

### 19) Enjoin Walden University to close down because this court has ruled against Walden's predatory behavior of black women and black students.

Cross-motion is necessary to enjoin Walden University to close down from operations because of numerous cases filed against this *for-profit* university alleging fraudulent and predatory behavior against minorities; especially, black women and black students such as this Plaintiff. See *Carroll et al. vs. Walden University et al,* Case 1:22-cv-00051-JMC(USDC-MD)(sub judice) mentioning predatory admission practices analogous in this same court against this same defendant.

## CONCLUSIONS

Plaintiff has requested judicial notices of adjudicative facts. Plaintiff incorporates this document into his forthcoming response to defendant's motion to dismiss. Cross-motion for sanctions will be necessary against Walden and its attorneys for making false defamatory statements to prejudice this court tom abuse its discretion. This court should not permit Walden to file its intended motion for injunction against this Plaintiff.

This court should re-focus its focus upon this instant case itself.

---

[4] See, https://www.youtube.com/watch?v=r401px1Udqo

Respectfully Submitted,

Michael O. Livingstone, *pro se*  
P.O. Box 34246  
Philadelphia, Pennsylvania 19101.  
Email: mikeliving40@gmail.com  
Telephone: 856-676-6951

<u>Dated: April 10, 2023</u>

## Certificate of Service via ECF pursuant to Fed. R. Civ. Proc. 5

I, Michael O. Livingstone hereby state that around April 10, 2023, I presented the foregoing to this Court for filing and by Fed. R. Civ. Proc. 5's applicability to Attorney ECF filers, I caused the same to be electronically served upon Defendant's Attorneys of record as follows:

> Chris Bayh, Esquire  
> Barnes & Thornburg LLP  
> Email: Chris.Bayh@btlaw.com  
> Erinn Maguire, Esquire  
> Lawrence Law, LLC  
> Email: erinn@lawrencelawllc.com

Respectfully Submitted,  
Michael O. Livingstone, *pro se*  
P.O. Box 34246  

Philadelphia, Pennsylvania 19101.  
Email: mikeliving40@gmail.com  
Telephone: 856-676-6951

<u>Dated: April 10, 2023</u>