IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| MICHAEL O. LIVINGSTONE, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 22-3096-BAH |
| WALDEN UNIVERSITY, LLC, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Pro se Plaintiff Michael O. Livingstone ("Plaintiff") filed suit in this Court against Defendant Walden University ("Defendant" or "Defendant University"), alleging sixteen counts ranging from common law negligence to violations of federal and state consumer protection and civil rights statutes. ECF 20. Before the Court is Defendant's motion to dismiss, ECF 43. All filings included memoranda of law.[1] The Court has reviewed all relevant filings, including Plaintiff's opposition, ECFs 62 and 64, and Defendant's reply, ECF 74, and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, Defendant's motion to dismiss all claims is **GRANTED**.

**I.       BACKGROUND**

The bulk of the allegations in this case center on the processing, or lack thereof, of Plaintiff's request for additional student financial aid from Defendant. *Id.* at 34–88. As such, some background information on the financial aid process is warranted.

---

[1] The Court references all filings by their respective ECF numbers.

A.  **The Student Financial Aid Process**

The federal government, through the Department of Education's Federal Student Aid division ("FSA"), makes available to qualified postsecondary intuitions federal funds to be used for undergraduate and graduate student financial aid in the form of grants and loans. 20 U.S.C. §§ 1070 *et seq*. The institutions then process students' applications for aid, considering factors such as household income and cost of attendance ("COA"),[2] and offer students financial aid packages consisting of a combination of loans and, sometimes, grants. 20 U.S.C. §§ 1087kk–1087vv.

The loans offered to a student through this process are federal student loans, though they are provided to the student through their postsecondary institution. *Id.* § 1087e. And although the institution calculates and awards the student's financial aid package, it does so under the structure outlined by FSA. *See, e.g.*, 34 C.F.R. § 685.203 (providing equations by which maximum amount dispensed in direct subsidized loans to a given student is to be calculated). FSA imposes detailed requirements on the aid that an institution may offer a student, including limitations on the amount that a student may be offered in loans. *Id.*

Once a student accepts their financial aid package from the institution, the institution dispenses the funds, and the student is obligated to repay the loans. 34 C.F.R. § 668.164; 34 C.F.R. § 685.207. This process is repeated for each year the student is enrolled at the institution. 34 C.F.R. § 685.201.

---

[2] The term "cost of attendance" ("COA") has a specific meaning in the student financial aid context and is defined in 20 U.S.C. § 1087ll. Broadly speaking, COA includes a student's tuition and fees, room and board, and reasonable living expenses. *Id.* § 1087ll(1)–(3). Particularly relevant to this case, the housing allowance incorporated into a student's COA for independent students living in off-campus housing "shall be an allowance based on the expenses reasonably incurred by such students for room and board" as determined by the institution. *Id.* § 1087ll(3)(D).

2

Of particular note to this case, there is a method by which a student may request additional student loan funds after they have already accepted their annual loan package. 20 U.S.C. § 1087tt. Through this process, a student may request an increase in their student loans based upon their COA, which the institution *may* choose to grant *at its discretion* based upon specifically enumerated factors.[3] *Id.* There is no requirement that institutions grant such requests. *Id.* Indeed, an institution may not originate a loan or combination of loans that "[e]xceeds the student's estimated cost of attendance" minus any scholarships, grants, and family contributions. 34 C.F.R. §685.301.

B.     **Events Giving Rise to This Case**

This case stems from events that unfolded during Plaintiff's time as a graduate student at Defendant University. ECF 20, at 10–33. In 2022, Plaintiff was completing the final classes required to earn his master's degree. *Id.* at 12. During his time enrolled at Defendant University, Plaintiff was not employed, and he supported himself using federal student loans. *Id.* at 11–12.

Though Defendant did not require Plaintiff to hold employment while enrolled in their academic program, Defendant marketed itself towards, and tailored its curriculum to, "working adults" and "working professionals." *Id.* at 11. Plaintiff alleges that Defendant's financial aid is calculated based upon living expenses for working adults. *Id.* In many of Plaintiff's classes, students were expected to complete assignments that involved utilizing their employment experience. *Id.*

---

[3] Financial aid administrators are not permitted to grant COA increases without a showing that the student is experiencing "special circumstances," such as unexpected medical expenses not covered by insurance or unanticipated unemployment of the student or the person who is financially responsible for the student. 20 U.S.C. § 1087tt(a).

3

From March 2022 through May 2022, Plaintiff was enrolled in one class at Defendant.[4] *Id.* at 16. During this time, Plaintiff rented an apartment in Pennsylvania. *Id.* at 16. Plaintiff sought to request an increase in his financial aid from Defendant in the form of additional student loan amounts to cover his increased cost of attendance due to "differential room and board educational expenses" ("COA increase"). ECF 20, at 16.

In an attempt to apply for a COA increase, Plaintiff checked Defendant's website, but found no forms to request such an increase nor any information on the process to request a COA increase. *Id.* at 17. Plaintiff emailed Defendant's financial aid office on February 26, 2022, and inquired about the process to request a COA increase but received no response. *Id.* He also called the office, but again received no response. *Id.* Plaintiff emailed the financial aid office again in early March 2022. *Id.* He was notified on March 14, 2022, that a case had been opened based upon his request, but he was still not provided with any information on how to request a COA increase. *Id.* Plaintiff called the financial aid office several more times and was eventually connected with a supervisor in the office. *Id.* at 18. He asked this supervisor to connect him with the director of financial aid services. *Id.* She did not, and she also did not provide Plaintiff with forms to request a COA increase.[5]

Plaintiff next began contacting other individuals in positions of leadership at Defendant regarding the lack of communication from the financial aid office. *Id.* at 18–21. On April 12 and 13, 2022, Plaintiff emailed Defendant's president, the assistant to Defendant's president, and

---

[4] According to Plaintiff, Defendant's semesters are divided into "two eight-week accelerated sessions," with the second Spring 2022 session running from March to May. ECF 20, at 16.

[5] Plaintiff does not state that he specifically asked this supervisor about the process to request a COA increase, only that he asked her to connect him with the director of financial aid. ECF 20, at 18.

Defendant's ombudsman, as well as the United States Secretary of Education's Office, and expressed his concerns about the lack of communication from Defendant's financial aid office. *Id.* at 18–19. On April 13, 2022, the assistant to Defendant's president responded to Plaintiff and asked for additional information, which Plaintiff provided that same day. *Id.* at 20. Plaintiff did not receive any additional response from any individual working for Defendant, so he sent a follow up email to the assistant to Defendant's president on April 22, 2022, asking for an update. *Id.* Shortly thereafter, Plaintiff received an email from Defendant's president which Plaintiff describes as "express[ing] sincere concern" for Plaintiff. *Id.* The president assured Plaintiff that he would be contacted by the financial aid office shortly. *Id.* at 21.

Later that same day, April 22, 2022, Defendant's director of financial aid emailed Plaintiff and explained:

> Walden University's living allowance is based on national economic data that reflects room & board, internet and mobile expenses associated with time in school for working adults. . . . Walden will review professional judgement requests for living allowance adjustments if there is a documented, unexpected change in the student's situation after beginning a Walden program or if the student can document that the request is a special circumstance required to complete the student's current program of study. We do not have documentation from you of a change in your financial circumstances since beginning Walden. We reviewed your request and found it reasonable to use the actual tuition and fees for your program instead of the estimated tuition and fees which will allow you to receive a credit balance refund for the estimated living allowance that Walden builds into the cost of attendance. We will also increase the loan fee allowance to reflect your total Graduate PLUS Loans packaged. . . . We are open to reviewing any documentation you provide of a change in your financial situation since beginning Walden to determine if we are able to adjust your estimated living allowance.

*Id.* at 21–22.

A few days later, on April 26, 2022, Defendant's executive director of financial aid emailed Plaintiff and informed him that a COA request application had been opened for him on Defendant's internal financial aid portal and asked that Plaintiff submit additional documentation regarding his

5

request. *Id.* at 22. Plaintiff and Defendant's executive director exchanged additional emails regarding supplemental documentation. *Id.* at 22–23. On April 28, 2022, the executive director emailed Plaintiff that she would review his application and respond to Plaintiff within two business days. *Id.* at 23. She did not respond to Plaintiff again until May 2, 2022, when she emailed Plaintiff that she would have a response for him within a week. *Id.* at 24. Plaintiff emailed the executive director on May 3, 2022, and asked that this review be expedited due to his obligation to pay his rent. *Id.* On May 5, 2022, Plaintiff again emailed the executive director, urging her to process his request for a COA increase of "$6000 for the Spring 2022 [semester] and $6000 for the 1st summer session." *Id.* at 25. Plaintiff and the executive director exchanged additional emails where the executive director promised that Plaintiff's application would be processed "soon," and Plaintiff urged her to process his application as soon as possible. *Id.* at 25–26.

On May 9, 2022, Plaintiff again emailed Defendant's president, the executive director of financial aid, and Defendant's provost, explaining his frustration with the situation. *Id.* at 26–27. Defendant's president replied to Plaintiff and apologized for the inconvenience, and later that day, the executive director emailed Plaintiff that she had approved a COA increase of $3,000 for the upcoming Summer 2022 session and $3,000 for the Fall 2022 semester, amounting to a total of $6,000.[6] *Id.* at 27. She noted that "Summer and Fall loans are not intended for Spring 2022." *Id.* The executive director also told Plaintiff, "If you require financial assistance after the Fall 2022

---

[6] Plaintiff states that this approval was for "$3000 a month for each of the four months" in the coming semesters, ECF 20, at 27, but elsewhere in the complaint, the total amount is consistently referred to as $6,000, leading the Court to interpret the COA approval as providing $3,000 for each of the two semesters. ECF 20, at 28 (noting that Plaintiff told Defendant that he "still" needed the additional $6,000 over what was provided to him, indicating that he had previously received $6,000 of his requested $12,000); ECF 20, at 31 (again noting a $6,000 deficit between Plaintiff's received funds and his requested funds).

6

semester, you will be required to submit the 2022–2023 FAFSA and maintain all other federal eligibility requirement[s]." *Id.* at 31.

Plaintiff replied that he needed the full amount of loans he had originally requested ($12,000 in total), including the $6,000 he had requested to cover the costs he incurred during the Spring 2022 semester. *Id.* at 28. In response, the executive director informed him that he was ineligible for a retroactive COA increase for the Spring 2022 semester because he "made the decision to stay enrolled beyond the 3/13/22 drop date" and "did not submit documentation to begin to appeal for a change to the standard COA until 3/30/22." *Id.* Plaintiff argued that he had begun attempting to submit his COA request in February 2022, and that he would have submitted it then had he been able to access the process. *Id.* Plaintiff sent another complaint about the process to the United States Department of Education, Defendant's president, Defendant's ombudsman, and the executive director by email on July 1, 2022. *Id.* at 28, 68. On July 14, 2022, the executive director emailed Plaintiff and informed him that the "adjustment to [his] charges from the Spring 2022 semester [] allow[ed] for a refund in the amount of $2,925 which [would] be distributed in the next few business days."[7] *Id.* at 31. The executive director cautioned Plaintiff that the refund was "a one-time refund which Walden [would] not make again to future terms." *Id.*

Plaintiff had incurred substantial arrears to his landlord during the Spring 2022 semester, and he thus used his Summer 2022 COA increase to pay those arrears. *Id.* at 30. He asked Defendant's executive director of financial aid for additional philanthropic resources for financial

---

[7] This amount appears to be in addition to the $6,000 Plaintiff received in additional student loans from his COA increase, given that it was a cash refund rather than a loan. *See also* ECF 43-1, at 3 (noting that Plaintiff was ultimately only denied $3,000 of his originally requested $12,000).

7

aid but received no information about such resources. *Id.* at 30–31. Though Plaintiff had not been evicted at the time of filing his complaint, he was "facing a summary disposes eviction from housing action [sic]." *Id.* at 32. Despite these events, Plaintiff graduated on time at the end of the Fall 2022 semester and earned high marks in his remaining classes.[8] ECF 20, at 31–32; ECF 64, at 38–40.

Plaintiff filed this lawsuit on November 30, 2022. ECF 1. He emailed Defendant's president and executive director of financial aid on December 2, 2022, informing them of the lawsuit. ECF 20, at 74. On December 5, 2022, Plaintiff again emailed the executive director of financial aid seeking the remaining amount of his original COA request. *Id.* Defendant offered Plaintiff a tuition refund of $5,000 in exchange for his release of all claims against Defendant. *Id.* at 75. Plaintiff refused. *Id.*

## II.   LEGAL STANDARD

Because Plaintiff brings this suit pro se, the Court must liberally construe his pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for him, nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, No. CIVA 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009), *aff'd*, 368 F. App'x 361 (4th Cir. 2010) (first citing *Small v. Endicott,* 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton,* 775 F.2d 1274, 1277 (4th Cir. 1985)).

---

[8] Plaintiff notes that in several of these classes, he initially received "I" grades, indicating that the class was "Incomplete," before the grades were later changed to As. ECF 20, at 31–32.

8

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. "Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf,* 932 F.Supp. 676, 679 (D. Md. 1996)).

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

III. <u>ANALYSIS</u>

    A.    **Plaintiff's Request for Leave to Amend**

Under Federal Rule of Civil Procedure 15(a), courts are to "freely give leave [to amend] when justice so requires." While it is within the discretion of a district court to deny leave to amend, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper

9

subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons that justify denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.*

The Local Rules in this district require that a party file a copy of the proposed amended pleading with their motion for leave to amend. Loc. R. 103.6 (D. Md. 2023). Simply requesting leave to amend in a response in opposition to a motion to dismiss does not constitute a proper motion for leave to amend. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (finding that a motion for leave to amend was "never properly made" where the plaintiffs "requested leave to amend only in a footnote of their response to defendants' motion for leave to amend, and again in the final sentence of their objections to the recommendation of the magistrate judge" and did not provide a proposed amended complaint to the district court); *see also U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) ("While Federal Rule 15(a) provides that leave to amend shall be freely given when justice so requires, a bare request in an opposition to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." (citation omitted)). This holds true even under the relaxed pleading standards applied to pro se plaintiffs. *Osei v. Univ. of Md. Univ. Coll.*, No. CV DKC 15-2502, 2018 WL 2117927, at *3 (D. Md. May 8, 2018)[9] ("[W]here . . . the [pro se] plaintiff fails to formally move to amend and fails to provide the district court with any proposed amended complaint or other indication of the

---

[9] It is not lost on the Court that the plaintiff in *Osei*, 2018 WL 2117927, is one and the same with Plaintiff in this case. *See* ECF 43-1, at 4 (identifying Plaintiff here as the plaintiff in other opinions from different stages of *Osei*'s procedural history).

10

amendments he wishes to make, 'the district court [does] not abuse its discretion' in denying a motion to amend the complaint." (omission in original) (quoting *Estrella v. Wells Fargo Bank, N.A.*, 497 Fed. App'x. 361, 362 (4th Cir. 2012))).

Here, Plaintiff filed no motion for leave to amend his "corrected amended complaint." Instead, he requested leave to amend in his opposition to Defendant's motion to dismiss without elaborating on what changes he would make to the complaint. ECF 62, at 2; ECF 64, at 62. This is not a proper request for leave to amend, and thus the Court need not consider it. *See Cozzarelli*, 549 F.3d at 630–31. Furthermore, even if the Court construed this bare request generously as a motion for leave to amend, such leave would still be denied. Though Plaintiff argues that "a district court should freely grant leave to amend civil rights claims," citing to *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.* in support, ECF 64, at 62, such leave need not be granted when it would be futile. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

Here, Plaintiff has already amended his complaint once, ECF 9, and "corrected" it once after seeking leave to do so, ECFs 14 and 20. Though the latter was styled as a "corrected complaint," it was in reality an amended complaint. *See Green v. Maroules*, 211 F. App'x 159, 161 (4th Cir. 2006) (treating pro se "corrected complaint" as amended complaint). As such, Plaintiff has already amended his complaint twice to no avail. And though Plaintiff provided no proposed amended complaint, he did incorporate a new legal argument in his opposition to Defendant's motion to dismiss. *See* ECF 64, at 74–75 (arguing for the first time that the Equal Credit Opportunity Act, 15 U.S.C. § 1691, provides a basis for finding that Defendant was negligent). This new legal argument does not impact the Court's below analysis of Plaintiff's standing and does not save Plaintiff's negligence counts from dismissal. Therefore, even though

Plaintiff did not file a proposed amended complaint, any amendments contemplated by Plaintiff at the time he filed his opposition were likely futile. Given Plaintiff's multiple previous amendments, the futility of his newly raised arguments in his opposition, and his failure to properly file for leave to amend, Plaintiff's request for leave to amend his complaint is **DENIED**.

### B. Defendant's Motion to Dismiss for Lack of Standing

The Court now turns to Defendant's motion to dismiss Plaintiff's complaint. Defendant argues that Plaintiff's complaint should be dismissed under Rule 12(b)(1) for lack of standing, or alternatively, under Rule 12(b)(6) for failure to state a claim. ECF 43, at 8. The Court will first consider the motion to dismiss for lack of standing before considering the motion to dismiss for failure to state a claim with respect to the surviving counts.

Whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597 (2007). It is the plaintiff's burden to establish standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To do so, a plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339. "[A]fter *Spokeo*, a plaintiff may not satisfy the strictures of Article III by alleging 'a bare procedural violation, divorced from any concrete harm.'" *Edmondson v. Eagle Nat'l Bank*, 344 F.R.D. 72, 76–77 (D. Md. 2023) (citing *Spokeo*, 578 U.S. at 341).

"To satisfy standing's causation requirement, the alleged injury must be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022) (alterations in original) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). A plaintiff must show a "causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. The causal connection must not be excessively attenuated. *Id.*, at 560–61.

For each of Plaintiff's sixteen claims, he must satisfy each of the elements of standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). It will benefit the Court to categorize Plaintiff's claimed injuries before beginning this analysis in earnest. Plaintiff alleges several injuries in his complaint. *See* ECF 20, at 33–88. In particular, he alleges injury in the forms of (1) his failure to "receive the [full] educative value" of his course of study at Defendant University; (2) the partial denial of his requested additional student loans; (3) discrimination in the processing of his student loan application; (4) eviction; (5) damaged rental history; (6) damaged credit report; and (7) emotional suffering. *Id.*

Plaintiff's alleged injuries can be grouped into three categories: those stemming from Defendant's failure to appropriately limit its programs to working adults; those stemming from the denial of Plaintiff's full amount of requested aid; and those resulting from Defendant's treatment of Plaintiff during the loan process.[10]

---

[10] Plaintiff's failure to receive the full educational value of his course of study falls into the first category; the denial of the loan, eviction, damaged rental history, and damaged credit report fall into the second category; and the alleged discrimination Plaintiff suffered falls into the third. The claimed emotional suffering spans all categories.

1. <u>Category one: injuries relating to Defendant's focus on "working adults"</u>

The Court first turns to Plaintiff's allegation that he suffered an injury in the form of not receiving the full value of the education he purchased due to Defendant's failure to require that he prove himself to be a "working adult" before admitting him. *See* ECF 20, at 33–68. Though Plaintiff several times asserts that he was denied the full value of his education because several class assignments required him to draw upon work experiences, nowhere does he claim that he was unable to complete the work, nor that he failed to learn from his classes. *See id.* In fact, Plaintiff makes clear that he ultimately earned high marks in all of his classes during the relevant timeframe and graduated on time. ECF 20, at 31–32; ECF 64, at 38–40. Thus, despite Plaintiff's assertion that he was harmed by Defendant's focus on "working adults," Plaintiff has pled no facts that actually support a finding of injury on this point. Furthermore, Plaintiff's alleged emotional suffering cannot constitute injury, because "free-standing 'emotional harm, no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes.'" *Magruder v. Cap. One, Nat'l Ass'n*, 540 F. Supp. 3d 1, 8 (D.D.C. 2021) (quoting *Humane Soc. of U.S. v. Babbitt*, 46 F.3d 93, 98 (D.C. Cir. 1995)). As such, Plaintiff has not shown injury in the form of his failure to "receive the [full] educative value" of his program at Defendant University nor in the form of emotional suffering. ECF 20, at 41.

2. <u>Category two: injuries relating to Defendant's refusal to approve Plaintiff's full amount of requested loans</u>

The most central harm alleged in the facts of Plaintiff's complaint is the partial denial of his request for additional student loans. *See* ECF 20, at 10–88. While this was undoubtedly unfortunate for Plaintiff, it is not a legally cognizable injury. An injury is "an invasion of a legally protected interest." *Spokeo*, 578 U.S. at 339. Here, Plaintiff identifies no authority that indicates he was entitled to the full amount of his requested additional aid. In fact, 20 U.S.C. § 1087tt makes

clear that discretionary increases such as the one sought by Plaintiff are only to be granted at the professional discretion of the financial aid office upon a showing of a specific set of enumerated factors. Because Plaintiff was not entitled to any increase in his student loans, it cannot be said that his failure to receive the full amount he requested was an injury.

This conclusion lends a fatal blow to the standing analysis for the remaining category two injuries (Plaintiff's eviction proceedings, reduced credit score, and damaged rental history). For each injury, a plaintiff must also demonstrate causation. *See Spokeo*, 578 U.S. at 597. Causation must be traceable to the alleged harmful conduct of the Defendant, and the causal link cannot be too attenuated. *Lujan*, 504 U.S. at 555, 560–61. Here, if Defendant had granted Plaintiff all his requested loans, it may well have spared Plaintiff the damage to his rental history, his eviction, and his credit score. However, it cannot be said that the denial *caused* those things in any but the most attenuated sense. In *Robbins v. United States Department of Housing and Urban Development (HUD)*, the court found that the plaintiff's alleged injury of looming eviction was not caused by HUD's actions in refusing to order the plaintiff's local Section 8 voucher provider to resolve a dispute with the plaintiff's landlord. 72 F. Supp. 3d 1, 6–7 (D.D.C. 2014), *aff'd sub nom. Robbins v. Castro*, No. 14-5298, 2015 WL 3372527 (D.C. Cir. May 6, 2015). Here, similarly, Plaintiff's alleged injuries, namely his eviction proceedings, damaged rental history, and credit score, stem from his failure to pay rent. Thus, this is ultimately a dispute between Plaintiff and his landlord. *See* ECF 20, at 52. While the Court is sympathetic to Plaintiff's plight in being unable to pay his rent, the injuries stemming from that unfortunate occurrence cannot be said to have been caused by Defendant's denial of financial aid to which Plaintiff was never entitled. As was the

case for the category one injuries, Plaintiff's remaining alleged emotional harm is insufficient to constitute an injury.[11] *See Magruder*, 540 F. Supp. 3d at 8.

As such, Plaintiff has failed to show injury with respect to Defendant's refusal to grant Plaintiff's full amount of requested loans and Plaintiff's emotional harm, and Plaintiff has failed to show causation with respect to the alleged injuries of his eviction proceedings, damaged rental history, and damaged credit history.

> 3. Category three: injuries relating to Defendant's treatment of Plaintiff during the processing of his COA request

The only remaining asserted injury is the alleged discrimination Plaintiff experienced during the financial aid process. Experiencing discrimination is an injury in itself. *Amador v. Mnuchin*, 476 F. Supp. 3d 125, 146 (D. Md. 2020) (collecting cases). Regardless of the merits of Plaintiff's discrimination claim, the alleged discrimination is, on its own, sufficient to constitute an injury. *Id.* And given that Plaintiff alleges injury in the form of discrimination, it is clear that such injury is traceable to Defendant's alleged discriminatory conduct. Furthermore, the injury of discrimination would be redressable through financial damages. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 141 S.Ct. 792, 801–802 (2021) (holding that even "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right"). As such, Plaintiff has demonstrated standing with respect to his discrimination claim.

Because Plaintiff has successfully demonstrated standing only with respect to his discrimination claim, count one ("Violation of the Civil Rights Act of 1964"), his other counts

---

[11] Though the Court acknowledges the seemingly appropriate frustration Plaintiff felt throughout the process of requesting a COA increase, even justified frustration, without more, is legally insufficient to constitute injury.

must be dismissed for lack of standing. Thus, counts two through sixteen are dismissed without prejudice.[12]

### C.  Defendant's Motion to Dismiss for Failure to State a Claim

Proceeding to Defendant's motion to dismiss for failure to state a claim, the Court is left with only Plaintiff's claim for discrimination under Title VI of the Civil Rights Act of 1964.[13] ECF 20, at 34–36. Title VI provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. This extends to any "college, university, or other postsecondary institution, or a public system of higher education" which receives federal funding. *Id.* § 2000d–4a(2)(A).

"To survive a motion to dismiss under Title VI, a plaintiff must plead sufficient facts supporting that (1) the defendant is a recipient of federal financial assistance; and (2) the defendant intentionally discriminated against plaintiff on the basis of race, color, or national origin." *Carroll v. Walden Univ., LLC*, 650 F. Supp. 3d 342, 355 (D. Md. 2022) (citation omitted). Here, Plaintiff has pled sufficient facts to support the first element, and Defendant does not dispute that it does indeed receive federal funds. ECF 20, at 12–14; ECF 43, at 5–6; *see also Carroll*, 650 F. Supp. at

---

[12] The Fourth Circuit has held that "[a] dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *Goldman v. Brink*, 41 F.4th 366, 369 (4th Cir. 2022) (citing *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013)).

[13] Though Plaintiff initially refers to this count as being brought under Title VII, ECF 20, at 33, he later refers to it as being brought under Title VI, *id.* at 35; ECF 20-2, at 4. Title VII addresses discrimination only in the context of employment, while Title VI prohibits discrimination in the broader context of "federally assisted programs," including educational institutions. *Compare* 42 U.S.C. § 2000e *et seq.* (Title VII) *with* 42 U.S.C. § 2000d *et seq.* (Title VI). Because the Court construes pro se claims liberally, this count is interpreted as a claim under Title VI.

17

355 (applying analogous reasoning). As such, this claim turns on the question of whether Plaintiff has pled sufficient facts to support an inference that Defendant intentionally discriminated against Plaintiff on the basis of his membership in a protected class.

Here, Plaintiff points to his membership in several purported protected classes. *See* ECF 20, at 8, 34–37. Specifically, he points to his national origin (unspecified West African); his race (Black); and his socioeconomic status (low-income). *Id.* While socioeconomic status is not a protected class, race and national origin are. *See* 42 U.S.C. § 2000d. However, beyond asserting his membership in these protected classes and Defendant's knowledge thereof, Plaintiff pleads no additional facts that support an inference of discrimination. He offers no facts suggesting animus based on race or national origin, nor does he indicate any specific interactions relating to his race or national origin at all. All Plaintiff has alleged is that (1) he is a member of a protected class; (2) he identified himself thusly on forms which were sent to Defendant; and (3) he was denied the full amount of his requested financial aid. ECF 34–37. These facts are not sufficient to give rise to an inference of discrimination. As such, Plaintiff has failed to state a claim for discrimination under Title VI. Thus, Plaintiff's final claim, count one, is dismissed without prejudice.

### IV.     CONCLUSION

For the reasons above, Defendant's motion to dismiss, ECF 43, is **GRANTED**. Plaintiff's complaint is **DISMISSED without prejudice**.

Dated: December 20, 2023

/s/
Brendan A. Hurson
United States District Judge